## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:12CV-00121-JHM**

**LAKE CUMBERLAND ASSOCIATION**                                          **PLAINTIFF**

**vs.**

**UNITED STATES ARMY CORPS OF ENGINEERS**                       **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiff, Lake Cumberland Association, for a preliminary injunction [DN 6] and a motion by Defendant, United States Army Corps of Engineers, to dismiss this action [DN 10].  Fully briefed, these matters are now ripe for decision.

### I.  BACKGROUND

In 1938, Congress authorized the construction of Wolf Creek Dam which impounded Lake Cumberland for flood control and hydropower generation. Wolf Creek Dam was completed in 1950. Lake Cumberland lies within Russell, Pulaski, Laurel, Whitley, McCreary, Wayne and Clinton Counties.  With the passage of the Federal Water Projection Recreation Act of 1965, recreation became an official project purpose on the lake.  As of January of 2011, ten commercial marinas operated under lease from the Defendant, United States Army Corps of Engineers, on Lake Cumberland.  In 2007, Wolf Creek Dam began to leak requiring remedial work.  As a part of the repair work which began in 2007, the Corps of Engineers required a draw down of the lake level to 680 feet.  The Corps of Engineers currently estimates that the drawdown will be required until 2014.

The Corps of Engineers established a Master Plan for managing Lake Cumberland.  The original Master Plan was prepared in 1949 and regular updates have been prepared thereafter.  The Lake Cumberland Master Plan (hereinafter "Master Plan") was most recently updated in January

of 2011.  In the January 2011 revision of the Master Plan, the Corps discussed the public interest in

developing a marina in the Watauga Recreation Area, also known as the Rowena Landing site, in

Russell County, Kentucky.  The Corps indicated that based on public interest in developing a new

marina at this site, the Corps conducted an informal needs analysis in 2007 to determine if there was

sufficient public demand, to determine what potential impacts a new marina would have on other

marinas, and "to avoid requiring prospective applicants to conduct and fund a major feasibility study

and market analysis."  (Master Plan, § 10.07.52, at 147.)  The Corps noted that "[t]he [informal

needs] analysis concluded that, due to vacancies at adjacent marinas and the potential economic

impacts to existing concessionaires of an additional marina during a period of financial downturn,

proposals for a new marina should be deferred until recreational conditions on the lake returned to

normal." (Id.)  Despite the informal needs analysis, the Master Plan noted that Clinton and Russell

Counties have continued to express interest in developing a marina at this site.  The Corps indicated

that "[p]rospective applicants would be responsible for funding and conducting a formal,

independent market analysis and feasibility study for Corps review to support the contention that

public demand exists and that market conditions warrant development of an additional marina at this

site at this time." (Id.)  Additionally, the Corps indicated that "[a] full review of any such proposal

will assist in determining whether this is an acceptable site for marina development or whether a

Master Plan supplement is required removing this site from further consideration for this type of

development." (Id. at 148.)

In January of 2012, the Corps issued a Notice of Availability for Lease for Commercial

Marina Concession at the Wolf Creek Dam – Lake Cumberland Project, Rowena Landing South,

Russell County, Kentucky ("NOA").  The NOA was issued for the purpose of soliciting proposals

for development and operation of a marina and related facilities and services at the Rowena Landing site. The NOA called for applications to be filed by July 2012 and projected an "[a]ward of lease (as appropriate)" by April 1, 2013.[1]  Currently, the first two of the deadlines have passed and the Corps is reviewing the proposals.

By letter dated July 10, 2012, Michael T. Abernathy, District Chief of Real Estate for the Corps, responded to a protest to the NOA by Bill Jasper of Wolf Creek Marina. Abernathy stated that in the event the Corps received an acceptable proposal and awarded the lease, the Corps would include as a condition of the lease terms that prohibited full operation at the Rowena Landing South site until January 2015. According to Abernathy, this "will provide the current marina owners on Lake Cumberland a full year to operate post construction before a new marina comes into operation." (Abernathy Letter at 1.)  Additionally, Abernathy also noted in the letter that should a proposal be selected for the marina, there will be an Environmental Assessment with a 30 day public comment period at which times concerns from the current marina operators can be expressed.

On July 16, 2012, Plaintiff, Lake Cumberland Association ("LCA"), filed the instant action against the United States Army Corps of Engineers pursuant to the Administrative Procedures Act, 5 U.S.C. § 701; the Declaratory Judgment Act, 28 U.S.C. § 2201; and the Federal Question statute,

---

[1]The full schedule of deadlines is as follows:

| EVENT | DEADLINE |
| --- | --- |
| Distribute availability notice | January 17, 2012 |
| Phase I submission deadline | July 16, 2012 |
| Proposal review | October 1, 2012 |
| Phase II submission deadline | December 1, 2012 |
| NEPA complete | February 15, 2013 |
| Pre-lease Conference | March 1, 2013 |
| Award of lease (as appropriate) | April 1, 2013 |

(Notice of Availability at 7.)

28 U.S.C. § 1331. Plaintiff describes itself as an association comprised of independent marina owners on Lake Cumberland. Plaintiff challenges the Corps issuance of the NOA soliciting applications for the future development of a new marina on Lake Cumberland. Plaintiff claims the Corps exceeded its authority and circumvented the Master Plan in issuing the NOA.

On July 30, 2012, Plaintiffs filed this motion for a preliminary injunction preventing the Corps from taking any further action on the Rowena NOA until such time as the repairs to the Wolf Creek Dam are complete, the Lake Cumberland pool levels have returned to pre-repair levels, and the economic condition of the current marina owners has improved to pre-repair levels. On September 25, 2012, the Court conducted a telephone conference at which time the parties indicated that a hearing on the motion for preliminary injunction was not necessary. On September 26, 2012, Defendant filed a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The Court will first address Defendant's motion to dismiss.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," American Telecom Co., L.L.C. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," Schultz v. General R.V. Center, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Ky., 381 F.3d 511, 516 (6th Cir. 2004). "A

facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  Here, the Corps' motion to dismiss raises a Rule 12(b)(1) facial attack on Plaintiff's jurisdictional allegations.  Coxco Realty, LLC v. United States Army Corps of Engineers, 2008 WL 640946, *2 (W.D. Ky. March 4, 2008).

### III. DISCUSSION

#### A.  Administrative Procedures Act

"A plaintiff cannot prove jurisdiction in lawsuits against the United States unless the government has waived its sovereign immunity and consented to suit." Id.  Plaintiff's Complaint alleges jurisdiction under the Administrative Procedures Act, the Declaratory Judgment Act, and the Federal Question statute.  Neither the Declaratory Judgment Act nor the Federal Question statute waives sovereign immunity or vests in district courts jurisdiction for review of federal agency action. See Sawan v. Chertoff, 589 F. Supp. 2d 817, 822 (S.D. Tex. 2008)(Declaratory Judgment Act is a procedural statute that does not provide an independent basis for federal court review); St. Andrews Park, Inc. v. U.S. Dept. of Army Corps of Engineers, 314 F. Supp. 2d 1238, 1242 (S.D. Fla. 2004). Thus, jurisdiction must exist by virtue of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701-706.

#### B.  Final Agency Action

"To state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court."  Bangura v. Hansen, 434 F.3d 487, 500 (6th Cir. 2006)(citing 5 U.S.C. § 704).  Two conditions must be satisfied

for agency action to be final: "First, the action must mark the 'consummation' of the agency's decisionmaking process-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett v. Spear, 520 U.S. 154,177-178 (1997)(citation omitted); see also Bangura, 434 F.3d at 500-501; Air Brake System, Inc. v. Mineta, 357 F.3d 632, 639 (6th Cir. 2004)). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992).

In the present case, Plaintiff alleges that the issuance of the NOA is a final agency action and is subject to an APA challenge.  Plaintiff maintains that the issuance of the NOA has affected the LCA's members' day-to-day operations and is a decision "from which legal consequences will flow" since the marina owners are having to prepare to compete against a new competitor in a market that is overly saturated with competitors and in desperate need of new customers.  Further, Plaintiff argues that the NOA also has the immediate effect of decreasing the value of the marinas themselves.    Plaintiff argues that the NOA has been issued without compliance with the process outlined in the Master Plan and detailed in a letter written by former Corps of Engineers District Engineer, Lieutenant Colonel Anthony P. Mitchell in December of 2010.  The December 2010 letter was written by Lieutenant Colonel Mitchell in response to concerns raised by Russell County Judge Executive Mickey Garner to a possible new marina at the Rowena South site.  The letter indicated in part that the Master Plan provided that a marina "could be supported by Lake Cumberland at the point when *economic conditions in the lake area improve*." (Mitchell Letter at 1(emphasis in original).)  Further, Mitchell stated that "the new marina site will not be made available until such

time as the Wolf Creek Dam repairs are complete and the pool returns to normal levels." (Id.)

Additionally, Mitchell indicated that "a preliminary environmental review, a determination of

minimum facilities requirements, and a physical feasability study considering impacts on project

operation, clean water and other factors must still be performed before the Notice of Availability

(NOA) for the new marina site can be prepared and released." (Id.)  Plaintiff argues that the current

issuance of the NOA by the Corps without these initial steps identified by Mitchell and without

improvement in the economic conditions on Lake Cumberland constitutes a substantive policy

change in direct conflict with the mandates of the Master Plan.  Plaintiff argues that this change in

policy occurred without the benefit of the public review and comment period required to change the

Master Plan.  Accordingly, Plaintiff contends that this change in policy is a final agency action and

is reviewable by the Court under the APA.

Contrary to the Plaintiff's argument, the Notice of Availability of a Lease is not an action

that marks the consummation of the agency's decision-making process.  Bennett, 520 U.S. at 177-

178.  No final binding decision from the Corps has been issued with respect to the lease.  The NOA

is tentative and interlocutory in nature.  In fact, both the Master Plan and the NOA contain

information indicating that the Corps may at any time withdraw the NOA and/or may not award the

lease.  (See NOA at 6)("The Government reserves the right to withdraw this NOA at any time if it

is determined to be in the best interests of the Government."); (See Master Plan, § 10.07.52)("A full

of review of any such proposal will assist in determining whether this is an acceptable site for

marina development or whether a Master Plan supplement is required removing this site from further

consideration for this type of development.")

Similarly, the NOA does not determine any legal rights or obligations or trigger a process

"from which 'legal consequences will flow.'" Bennett, 520 U.S. at 178. The Master Plan makes

clear that the NOA is an interlocutory step in the agency's administrative determination of whether

a new marina is feasible at the site in question. In fact, the record reflects that only two of the seven

"Events" listed in the NOA has occurred so far. Additionally, the NOA provides that no contract,

if any, will be awarded until April of 2013. The Plaintiffs have offered no authority that the NOA

has a legal effect upon the members of the LCA. In fact, as discussed above, the NOA itself

provides that it may be withdrawn at anytime. (NOA at 6.) Because the NOA process is ongoing,

the Corps may ultimately decide not to award the lease which would render Plaintiff's claims moot.

Therefore, the rights and obligations of the parties or potential leaseholders have not been

"determined." The claim that the members of the LCA may experience economic hardship because

of the uncertainty of whether a new marina will be built at Lake Cumberland does not render the

NOA a final order. Bituminous Cas. Corp. v. Walden Resources, LLC, 672 F. Supp.2d 835, 847

(E.D. Tenn. 2009)("Legal consequences, not economic consequences, are the touchstone for

determining whether the second Bennett factor is satisfied.").

Additionally, the Court rejects Plaintiff's argument that because the Corps issued the NOA

prior to the "recreational conditions on the lake return[ing] to normal," the NOA is in violation of

the Master Plan. (Master Plan, § 10.07.52, at 147.) The Plaintiff misconstrues the language in the

Master Plan. The Master Plan acknowledged that a 2007 needs analysis concluded that proposals

for a new marina should be deferred until recreational conditions on the lake return to normal;

however, the Master Plan recognized that both Clinton and Russell Counties continued to express

interest in developing a marina at the Rowena site and suggested that prospective applicants would

be required to submit market and feasibility studies addressing the concerns raised in the informal

needs analysis. (Master Plan, § 10.07.52, at 147-148.)  Thus, the issuance of the NOA and consideration of the lease applications are actions clearly within the scope of the Master Plan as it pertains to the Rowena Landing site.

Furthermore, Plaintiff offers no support for its argument that the response letter sent by Lieutenant Colonel Mitchell is a final agency action subject to review.  Plaintiff complains that the Corps "changed its policy" with respect the Rowena site when it issued the NOA without consideration of the items specifically listed in Lieutenant Colonel Mitchell's letter sent to Judge Executive Garner in December of 2010.  However, a subsequent letter issued by United States Corps of Engineers Director of Civil Works, Steven Stockton, and attached to Plaintiff's Complaint, indicates that the Corps "completed the preliminary environmental review, the determination of minimum facilities requirements, and the physical feasibility study concerning the impacts on the Wolf Creek Dam project's operation, clean water, and other factors necessary to proceed with the NOA advertisement of the Rowena South site." (February 28, 2012 Stockton Letter at 1.)  Both Mitchell's and Stockton's letters were issued in response to inquiries or complaints from individuals regarding the potential lease of the Rowena site.  Neither letter appears to alter the Master Plan or reflects a final agency action of the Corps of Engineers.  See, e.g., CareToLive v. von Eschenbach, 525 F. Supp. 2d 938, 949 (S.D. Ohio 2007) (quoting Bennett, 520 U.S. at 178) (finding that a response letter from Food and Drug Administration did not satisfy second Bennett factor because it did not "alter the legal regime").

Accordingly, the Court finds that none of the agency actions cited by the LCA represent final agency action under the APA, and therefore, the Plaintiff's Complaint is dismissed for lack of subject matter jurisdiction.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant,

United States Army Corps of Engineers, to dismiss for lack of jurisdiction [DN 10] is **GRANTED**.

The motion by Plaintiff, Lake Cumberland Association, for a preliminary injunction [DN 6] is

**DENIED** as moot.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

November 6, 2012

cc: counsel of record